**JONES v. PESCOR et al.**
No. 4865.

United States District Court
W. D. Missouri, W. D.

Nov. 27, 1948.

Edward R. Jones, per se.

Sam M. Wear, U. S. Atty., and Thomas A. Costolow, Asst. U. S. Atty., both of Kansas City, Mo., for defendants.

REEVES, Chief Judge.

The above case was reversed by the Court of Appeals, 8 Cir., 169 F.2d 853, and re-

136

manded for a rehearing on the sole question whether the Fifth Amendment to the Constitution of the United States was violated at petitioner's trial on a criminal charge by being compelled to be a witness against himself. The constitutional provision is, so far as pertinent here: "No person * * * shall be compelled in any Criminal Case to be a witness against himself * * *." In his application for a writ of habeas corpus the petitioner averred that in his trial he was compelled to testify against himself. The Court of Appeals believed that this was of such moment as to warrant a hearing on that issue. The court was properly dubitante as to the truth of the averment.

In the meantime the petitioner was conditionally released from custody and, after the evidence was taken on the foregoing issue, the petitioner has secured his complete release. However, since the matter is still pending in this court it seems proper to indicate what the testimony showed on the issue of the respondent being compelled to be a witness against himself. The criminal case was tried before the Honorable John P. Barnes of the Northern District of Illinois, Eastern Division, on November 14, 1945. The charge against the petitioner was draft evasion. A jury was waived conformable to the requirements of law. The petitioner was represented by counsel, who, at the conclusion of the government's case, said: "If the Court please, I trust that you have had ample opportunity to read Dr. Hulbert's statement of his examination of the defendant in this case."

The statement in question was then produced and offered in evidence, and thereupon the petitioner's counsel said:

"If the court please, in view of this report, there is nothing else to do on behalf of this defendant but to plead guilty to the violations as alleged by the Government in the Indictment."

"But I would like to relate this: This man must have a mental blackout some place. I can't understand it—a man of his training and education and with his background, never convicted of a crime; not a criminal type; and there is something absent in this man that I haven't been able to determine what it is, your Honor."

"By the Court: Let me find out something about it. I don't know anything about him. I have just got a mass of words from the doctor."

By respondent's counsel, Mr. Snyder: "That is exactly it, your Honor."

"By the Court: And he concludes that he is sane, and not insane; that he understands the charge against him; he can cooperate with his attorney; and he can understand the sentence of the court. Let him come up, and I will find out more about him than I do out of these papers."

Thereupon the petitioner was called to the witness stand and was interrogated by the court, not concerning the offense committed by him, but about matters that might disclose to the court the mental condition of the petitioner. Not one question was asked nor was one word said about the offense committed by the petitioner. No questions were propounded to him regarding the accusation against him. This was unnecessary because the uncontradicted testimony showing his guilt was before the court, and, moreover, petitioner's counsel had evinced a purpose to plead guilty. On the issue presented, the certificate of Judge Barnes, as contemplated by the statute, was presented. This was supplemented by a transcript of the testimony at the trial. This transcript shows that the petitioner answered all questions intelligently and even in a lawyer-like way. He was a member of the bar and had engaged in the practice of law over a period of years.

At the conclusion of the interview (and it was no more than that) Judge Barnes apparently was satisfied with the report of the psychiatrist and imposed a moderate sentence upon the petitioner. He characterized the claim of mental inadequacy as "silly." Under the law, an application for a writ of habeas corpus should not only state facts as a basis for a discharge, but the averments must be supported by the oath of the petitioner. In this case petitioner's averments as to the facts are false and the question arises as to whether a prosecution for perjury should not be instituted.